# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-13-00204-CV

**Mary Smith d/b/a Upscale Child Development Center, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GV-12-001705, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Family and Protective Services (the Department) sued Mary
Smith d/b/a Upscale Child Development Center (Smith), alleging that she was operating an illegal,
unlicensed child-care facility in her home in violation of Chapter 42 of the Human Resources Code
and related regulations. *See* Tex. Hum. Res. Code §§ 42.001-.210; 40 Tex. Admin. Code §§ 745.31-
.37 (Tex. Dep't of Family & Protective Servs., Child Care & Other Operations that We Regulate).
The Department sought injunctive relief, penalties, attorney's fees, and costs. After a hearing on the
merits, the trial court issued a permanent injunction, the terms of which Smith challenges on appeal
as being overly broad, unsupported by sufficient evidence, and in violation of her privacy rights
under the Fourth Amendment of the United States and Texas Constitutions to the extent it grants the

Department the right to conduct reasonable inspections of her premises.[1]  Because Smith failed to preserve error as to these issues, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

After a period of operating a registered child-care facility, Smith applied for a license to operate a licensed child-care center and was permitted to operate as such under a temporary permit.  *See* 40 Tex. Admin. Code § 745.37 (identifying differences between registered and licensed child-care operations).  During the probationary period afforded by the temporary permit, the Department determined that Smith's operations violated several of its rules for child-care facilities.  The Department therefore denied the requested license and ordered Smith to cease operating an unlicensed child-care facility.  Smith challenged the Department's decision, but it was upheld in a separate administrative proceeding.

Although Smith was not authorized to operate a child-care facility of any kind thereafter, the Department alleges that its personnel observed, on more than one occasion, multiple children being delivered and retrieved from Smith's premises in a manner suggestive of child-care operations that would be subject to regulation by the Department.  The Department asserts that, even though Smith denied providing such services, both she and her daughter were combative with the Department's personnel and hindered their efforts to ascertain whether regulated services were, in fact, being provided.

---

[1]  The Department also sued and obtained identical relief against Smith's son, Jason Smith, but he did not file a notice of appeal and, thus, is not a party to these appellate proceedings.

Based on the observations of the Department's staff, the Department sued Smith, seeking a permanent injunction to prevent her and her "agents, assigns, and employees" from (1) operating an illegal child-care facility, (2) operating an unlicensed childcare facility, (3) advertising child-care services, and (4) collecting compensation for child-care services. The Department also requested that it be permitted to make reasonable inspections of Smith's property "if the Department has reason to believe that [she] is providing illegal childcare" in her home. In addition to injunctive relief, the Department sought to recover civil penalties, attorney's fees, and costs from Smith.

After filing suit, the Department initially obtained a temporary injunction against Smith. As required by the rules of civil procedure, the temporary-injunction order established a date for a trial on the merits with respect to the Department's request for a permanent injunction. *See* Tex. R. Civ. P. 683 ("Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought."). An evidentiary hearing subsequently occurred as scheduled on February 20, 2013.

Before introducing any evidence at that proceeding, the Department stated that it was "willing to forego civil penalties, attorney's fees and costs if we can just get a permanent injunction issued." Smith countered that she was not running an illegal day-care operation and was only caring for children of relatives. Consequently, Smith stated that she "would accept the permanent injunction" if the wording were modified to identify the correct owners of the business. According to Smith, her son had been improperly identified as an owner in the temporary injunction and proposed permanent injunction. The Department pointed out, however, that in the license application filed for the business,

3

the owners had been identified as Smith and her son. Although contending that there was an error in the license application, Smith conceded that the application was filed on her behalf by her daughter, who she alleged was the true co-owner. Smith made no other objections about the language that had been used in the temporary injunction or the proposed permanent injunction.

At the conclusion of the proceeding, the trial court issued a permanent injunction on substantially the same terms as the temporary injunction. The Department's claims for civil penalties, attorney's fees, and costs were not mentioned in the permanent injunction, either in terms of their disposition or with respect to reserving those issues for further consideration. There likewise was no "Mother Hubbard" type language.

Although Smith now contends that the language in the permanent injunction is flawed in numerous respects, she never filed any post-judgment motion complaining about the terms of the permanent injunction or otherwise alerted the trial court to any alleged errors in the language of either the temporary or permanent injunctions, except complaining at trial about the identity of the business owners. To the contrary, in March 2013, she executed an "Agreed Final Judgment" in which the terms of the permanent injunction were incorporated by reference. In the Agreed Final Judgment, Smith (1) assented to the terms of the permanent injunction, (2) agreed that the injunction was enforceable by contempt, and (3) acknowledged that violation of the injunction might prompt additional enforcement actions by the Department that could include penalties, costs, and fees. In exchange, the Department expressly waived its claims for penalties, costs, and fees in the underlying matter. Shortly after executing the Agreed Final Judgment, Smith filed a notice that she was appealing the February 20 permanent injunction. The trial court ultimately signed the Agreed Final Judgment on April 25, 2013.

4

**DISCUSSION**

Smith's challenges on appeal are principally directed to the terms of the February 20 permanent injunction. Specifically, Smith contends that the trial court abused its discretion in granting the injunction because (1) the terms of the injunction are overly broad and effectively preclude her from engaging in lawful child-care activities, such as free babysitting; (2) the terms of the injunction effectively preclude her from reapplying to the Department for registration, licensing, or listing as a child-care facility even though the Department's application for permanent injunction requested injunctive relief only until the happening of such an event; (3) there is factually and legally insufficient evidence to support the trial court's finding that Smith's child-care facility poses an immediate threat to the health and safety of the children in its care; and (4) the injunction includes language violating her constitutional right to be free from unreasonable searches by requiring her to submit to future inspections of her home if the Department has "reason to believe" she is operating a child-care facility.

Among other arguments, the Department asserts that Smith waived her substantive challenges to the permanent injunction when she agreed to the terms of the injunction as part of the Agreed Final Judgment. Smith contends, however, that the permanent injunction was a final judgment and that the trial court lacked jurisdiction to modify or supersede it with the Agreed Final Judgment, which the court signed more than two months later. Thus, the preliminary issue before us is which judgment is the trial court's final judgment for purposes of this appeal.

Resolution of this question does not affect our jurisdiction because Smith timely filed her notice of appeal regardless of whether the earlier judgment was final or interlocutory. *See*

5

Tex. R. App. P. 26.1. Moreover, our ultimate disposition of the case will be the same regardless of which judgment is final. However, because we are not authorized to substantively review a judgment rendered without jurisdiction, we must first determine which of the two judgments is the trial court's final judgment.

A judgment, including a series of separate orders, that neither expressly disposes of all claims nor includes "Mother Hubbard" type language may nevertheless be considered final for purposes on appeal. *See North E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897-98 (Tex. 1966)*.* When a judgment rendered in a case regularly set for conventional trial on the merits is not intrinsically interlocutory in character, and no order for a separate trial of issues has been made, it is presumed that the trial court intended the judgment to be a final judgment, disposing of all parties legally before it and all of the issues made by the pleadings. *Id.*; *see Vaughn v. Drennon*, 324 S.W.3d 560, 563 (Tex. 2010); *Moritz v. Preiss*, 121 S.W.3d 715, 718-19 (Tex. 2003); *John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 740 (Tex. 2001).

The *Aldridge* presumption of finality does not apply to (1) inherently interlocutory orders, such as partial summary judgments; (2) non-merits dispositions, such as nonsuits, pleas to the jurisdiction, pleas in abatement, and dismissals for want of prosecution; (3) cases not set for a conventional trial on the merits, including default judgments and summary judgments; and (4) judgments that affirmatively reserve an issue for future adjudication. *See Houston Health Clubs, Inc. v. First Court of Appeals*, 722 S.W.2d 692, 693 (Tex. 1986) (observing that *Aldridge* presumption does not apply to summary judgments or default judgments); *Aldridge*, 400 S.W.2d at 897-98 (excluding non-merits dispositions from presumption of finality); *City of Garland v. Futerfas*,

6

665 S.W.2d 140, 141-42 (Tex. App.—Dallas 1993, no writ) (order on appeal was not final because it specifically reserved some claims for later hearing before court).

In the present case, the permanent injunction was rendered after a trial on the merits and an evidentiary hearing was held. The Department did not request, and the trial court did not enter, an order for a separate trial against Smith as to those issues or any other. Likewise, the judgment granting the permanent injunction does not reserve those or any other issue for future adjudication. Thus, none of the exceptions to the *Aldridge* presumption applies. Although the presumption is just that, there is nothing in the record to indicate that the trial court did not intend to finally dispose of the entire case, especially in light of the Department's expressed willingness to abandon its monetary claims in exchange for the permanent injunction. For these reasons, we conclude that it is appropriate to apply the *Aldridge* presumption and conclude that the February 20 judgment granting the Department's request for a permanent injunction against Smith was a final judgment and that the April 25 Agreed Final Judgment was rendered without jurisdiction. We therefore sustain Smith's first appellate issue.

Although we agree with Smith on this point, Smith's substantive complaints of error in appellate issues two through four fail because she did not notify the trial court about any of the issues she now asserts on appeal. To preserve error for appeal, Smith was required to raise the alleged errors in the trial court by making a timely request, objection, or motion that complied with the requirements of the rules of civil procedure. *See* Tex. R. App. P. 33.1(a). Even though the terms of the permanent injunction are substantially similar to the terms of the previously imposed temporary injunction, Smith never raised any of her current complaints about the language of the

7

injunction by any method in the trial court. Accordingly, we must conclude that Smith did not preserve error as to those matters and, therefore, overrule her second, third, and fourth appellate issues.

## CONCLUSION

In light of the foregoing, we vacate the April 25, 2013 judgment, which was entered beyond the trial court's plenary power, and affirm the trial court's February 20, 2013 judgment granting the Department a permanent injunction against Smith.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed on Motion for Rehearing

Filed: January 29, 2015